## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TODD DANIELS,

                 Petitioner,               Case Number: 04-71418

v.                                   HONORABLE DENISE PAGE HOOD

BLAINE LAFLER,

                 Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### I.  Introduction

Petitioner Todd Daniels, through counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, pursuant to convictions for three counts of second-degree murder and seven counts of assault with intent commit murder.  For the reasons set forth below, the Court denies the petition.

### II.  Facts

Petitioner's conviction arises out of an arson fire at a home on Belvidere Street, in Detroit, Michigan on October 6, 1996, which killed three children and injured several other people.  The prosecution presented evidence that, at co-defendant Paula Bailey's instigation, Petitioner and Eugene McKinney intentionally set fire to a house in which Bailey's ex-boyfriend and several others lived.  The prosecution presented evidence that

Paula Bailey offered McKinney $1,000 to set the fire.

William Griffis, a sergeant with the Detroit Fire Department, testified that, he along with his engine company, responded to the fire. They found three deceased children inside the home. Sergeant Griffis testified that it was obvious that the fire had been intentionally set. He based this conclusion upon the strong smell of gasoline. He found an anti-freeze jug that smelled of gasoline outside the home.

Consuella Lewis testified that she heard McKinney asking Paula Bailey for money after the fire had been set. Lewis testified that McKinney told Bailey that he needed $200 to pay Petitioner.

Petitioner's statement to police was admitted into evidence. In the statement, Petitioner admitted that he heard Paula Bailey tell her brother, Paul Bailey, and McKinney that she would pay someone $1,000 to burn down the house on Belvidere. Petitioner accompanied McKinney as McKinney poured gasoline along the side of the house on Belvidere. Petitioner also admitted to aiding McKinney in retrieving a refill of gasoline and pouring some on the ground outside the home. Petitioner also admitted to receiving $200 from McKinney for being there when McKinney set the house on fire.

### III. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of three counts of second-degree murder and seven counts of assault with intent to commit murder. On November 21, 1997, Petitioner was sentenced to twenty to forty years imprisonment for each of the murder convictions and five to ten years imprisonment for

2

each of the assault convictions, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.  The custodial statement made by Todd Daniels was not admissible because it was the product of an unlawful, warrantless arrest not supported by probable cause.

II.  Todd Daniels was denied due process of law and his convictions for the offense of second degree murder and assault with the intent to commit murder should be vacated where the jury was charged on a theory that defendant was an aider and abettor and the evidence was insufficient to establish that beyond a reasonable doubt that he shared the principal's intent or conduct.

III.  Todd Daniels was deprived of a fair and impartial trial in violation of both the United States and Michigan Constitutions where the prosecutor in the middle of his trial gave a public newspaper interview which effectively communicated a "civic duty" argument concerning the need to stop revenge arsons resulting in a front page newspaper article to which defendant's jurors may have been exposed as well as by making various impermissible, inappropriate comments in closing argument.

IV.  The trial court committed reversible error by denying defendant's motion for mistrial where the prosecutor made prejudicial public media comments contributing to a front page newspaper article or alternatively, the court erred by simply assuming that no juror read the article or discussed it with any other sitting juror and the court failed to make any inquiry whatsoever.

V.  There is reversible error where the trial court sua sponte without notice, without hearing and without any appropriate inquiry removed defendant-appellant's court appointed counsel and appointed another counsel.

VI.  Defendant Todd Daniels' conviction should be reversed where the cumulative effect of multiple errors deprived him a fair trial under the state and federal constitutions.

Petitioner also filed a *pro se* supplemental brief, presenting the following claims:

3

I.      Todd Daniels was denied his right to due process of the law guaranteed by
        the 5th and 14th Amendments to the United States Constitution and Article 1,
        Sec. 17, Michigan Constitution 1963, where the trial court erred in denying
        defendant's motion for a directed verdict.

II.     Todd Daniels was denied due process of law guaranteed by the 5th and 14th
        Amendments to the United States Constitution and under Article 1, Sec. 17,
        Michigan Constitution 1963, where the trial court failed to clearly and
        correctly instruct the jury on the specific intent of arson, and the intent
        necessary to be convicted of aiding and abetting.

III.    The trial court erred in allowing in hearsay statements of alleged co-
        conspirators before the prosecutor proved conspiracy by a preponderance of
        the evidence.

IV.     The defendant was denied due process of law, guaranteed by the 5th and 14th
        Amendments of the United States Constitution, and Article 1, Section 17,
        Michigan Constitution, 1963, when the trial court ruled that the defendant's
        confession was voluntary, based on the state having probable cause to
        arrest.

V.      Todd Daniels was deprived of his right under the 6th Amendment to the
        Constitution under Article 1, Section 20, Michigan Constitution 1963, to the
        effective assistance of counsel, when his attorney made false admissions,
        failed to call witnesses, failed to object, failed to effectively cross-examine
        witnesses, failed to investigate and present a defense, failed to put the
        prosecutor's case to a meaningful adversarial testing.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v.

Daniels, No. 210014 (Mich. Ct. App. Oct. 3, 2000).

Petitioner then filed an application for leave to appeal in the Michigan Supreme

Court, presenting the following claims:

I.      Whether the Court of Appeals determinations in the present case were
        clearly erroneous and contrary to prior decisions of the United States
        Supreme Court, the United States Court of Appeals for the Sixth Circuit,
        previous decisions of this Court, and published decisions of other panels of
        the Court of Appeals?

4

II.     The custodial statement made by Todd Daniels was not admissible because
        it was the product of an unlawful, warrantless arrest not supported by
        probable cause.

III.    Todd Daniels was denied due process of law and his convictions for the
        offense of second-degree murder and assault with intent to commit murder
        should be vacated where the jury was charged on a theory that defendant
        was an aider and abettor and the evidence was insufficient to establish
        beyond a reasonable doubt that he shared the principal's intent or conduct.

IV.     Todd Daniels was deprived of a fair and impartial trial in violation of both
        the United States and Michigan Constitutions where the prosecutor in the
        middle of his trial gave a public newspaper interview which effectively
        communicated a "civic duty" argument concerning the need to stop revenge
        arsons resulting in a front page newspaper article to which defendant's
        jurors may have been exposed as well as by making various impermissible,
        inappropriate comments during closing argument.

V.      The trial court committed reversible error where the trial court sua sponte
        without notice, without hearing and without any appropriate inquiry
        removed defendant-appellant's court appointed counsel and appointed
        another counsel.

VI.     There is reversible error where the trial court sua sponte without notice,
        without hearing, and without any appropriate inquiry removed defendant-
        appellant's court appointed counsel and appointed another counsel.

VII.    The custodial statement made by Todd Daniels was not admissible because
        it was the product of an unlawful, warrantless arrest not supported by
        probable cause.

VIII.   Todd Daniels was denied due process of law and his convictions for the
        offense of second-degree murder and assault with the intent to commit
        murder should be vacated where the jury was charged on a theory that
        defendant was an aider and abettor and the evidence was insufficient to
        establish that beyond a reasonable doubt that he shared the principal's intent
        or conduct.

IX.     Todd Daniels was deprived of a fair and impartial trial, in violation of both
        the United States and Michigan Constitutions where the prosecutor in the
        middle of his trial gave a public newspaper interview which effectively

communicated a "civic duty" argument concerning the need to stop revenge
arson resulting in a front page newspaper article to which defendant's jurors
may have been exposed as well as by making various impermissible,
inappropriate comments in closing argument.

X.     The trial court committed reversible error by denying defendant's motion
       for mistrial where the prosecutor made prejudicial public media comments
       contributing to a front page newspaper article or alternatively, the court
       erred by simply assuming that no juror read the article or discussed it with
       any other sitting juror and the court failed to make any inquiry whatsoever.

XI.    There is reversible error where the trial court sua sponte without notice,
       without hearing, and without any appropriate inquiry removed defendant-
       appellant's court appointed counsel and appointed another counsel.

XII.   The trial court erred in allowing in hearsay statements of alleged co-
       conspirators before the prosecutor proved a conspiracy by a preponderance
       of the evidence.

XIII.  The defendant was denied due process of law, guaranteed by the 5th and 14th
       Amendments of the United States Constitution, and Article 1, Section 17,
       Michigan Constitution, 1963, when the trial court ruled that the defendant's
       confession was voluntary, based on the state having probable cause to
       arrest.

XIV.   Todd Daniels was deprived of his right under the 6th Amendment to the
       Constitution under Article 1, Section 20, Michigan Constitution 1963, to the
       effective assistance of counsel, when his attorney made false admissions,
       failed to call witnesses, failed to object, failed to effectively cross-examine
       witnesses, failed to investigate and present a defense, failed to put the
       prosecutor's case to a meaningful adversarial testing.

The Michigan Supreme Court denied leave to appeal.  People v. Daniels, No.

118116 (Mich. June 26, 2001).

On December 12, 2001, Petitioner filed a petition for a writ of habeas corpus in

this Court.  He then filed a motion to dismiss the petition without prejudice so that he

could return to state court to exhaust his state court remedies.  The Court granted the

6

motion and dismissed the petition without prejudice.  Daniels v. Jackson, No. 01-CV-

74898-DT (E. D. Mich. Aug. 30, 2002).

Petitioner then filed a motion for an evidentiary hearing pursuant to People v.

Ginther, 390 Mich. 436 (1973), in the trial court.  He presented the following claim in that

motion:

> The issue Mr. Daniels seeks to have reviewed is whether he is entitled to a
> new trial because he was denied his constitutional right to the effective
> assistance of counsel because his trial counsel was ineffective for failing to
> prepare and file a pretrial motion pursuant to People v. Walker, 374 Mich.
> 331 (1965); challenging the voluntariness of Mr. Daniels' involuntary
> confession where it was known to him at the time, and failure to call key
> defense witnesses.

The trial court treated the motion as a motion for relief from judgment and denied

it.  People v. Daniels, No. 96-0085230-DT (Wayne County Circuit Court Aug. 21, 2002).

Petitioner filed a motion for rehearing, which was also denied.  People v. Daniels, No. 96-

0085230-DT (Wayne County Circuit Court Oct. 24, 2002).

Petitioner then filed an application for leave to appeal in the Michigan Court of

Appeals, presenting the following claim:

> The trial court abused its discretion by failing to order a Ginther hearing
> into trial counsel's conduct at appellant's Walker hearing where he
> abandoned the issue of voluntariness by failing to argue appellant's
> involuntary confession was coerced through improper police intimidating
> tactics and failed to call known supporting defense witnesses.  The trial
> court's error also denied appellant due process of law.

The Michigan Court of Appeals denied leave to appeal.  People v. Daniels, No.

247202 (Mich. Ct. App. Aug. 13, 2003).

7

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claim presented to the Michigan Court of Appeals and the following additional claim:

> The trial court and the Court of Appeals erred when they construed appellant's motion for a Ginther hearing as a motion for relief from judgment denying appellant a fair opportunity to make a testimonial record for his ineffective assistance of counsel claim.

The Michigan Supreme Court denied leave to appeal. <u>People v. Daniels</u>, No. 124610 (Mich. Feb. 27, 2004).

Thereafter, Petitioner, through counsel, filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.   Whether there was insufficient evidence to support the verdict, where there was insufficient evidence to support that Petitioner shared the intent of the principal or caused the fire.

II.  Whether Petitioner was improperly deprived of his right to counsel where the court fired his attorney outside Petitioner's presence, because attorneys for codefendants had acted improperly.

III. Whether Petitioner was prejudiced by improper actions of the prosecutor.

IV.  Whether the jury instructions on aiding and abetting denied due process.

V.   Whether Petitioner's statement to police was involuntary and its admission denied due process of law.

VI.  Whether Petitioner was prejudiced by ineffective assistance of counsel.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

9

> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this Court and nevertheless
> arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United

States Supreme Court held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause when "a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  Id. at 409.

The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 409-11.


# V.  Analysis

## A.  Sufficiency of the Evidence

In his first claim for habeas corpus relief, Petitioner argues that the prosecutor

presented insufficient evidence to sustain his convictions.  Specifically, Petitioner argues

that the prosecutor failed to establish that Petitioner was anything other than a witness to

a fire being set by McKinney, and that Petitioner did not share McKinney's intent.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that

the standard of review for a sufficiency of the evidence challenge must focus on whether

"after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." Id. at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this court

must determine whether the state court applied the correct standard and whether that

application was contrary to or an unreasonable application of Supreme Court precedent.

In making this determination, this Court must afford the state court's findings of fact a

presumption of correctness unless it is established by clear and convincing evidence that

the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West

v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding this claim, the Michigan

Court of Appeals, held, in pertinent part:

> [D]efendant argues that the evidence was insufficient to support his
> convictions of second-degree murder and assault with intent to murder
> under an aiding and abetting theory because there was insufficient evidence
> to establish that he shared the principal's intent. To be convicted as an
> aider and abettor, a defendant must either intend the commission of the
> crime or participate in the crime while knowing that his principal intended
> the commission of the crime. People v. Carines, 460 Mich. 750, 757; 597
> N.W.2d 130 (1999). Viewing the evidence in the light most favorable to
> the prosecution, id. at 757, we believe the evidence was sufficient to
> indicate that defendant aided and encouraged codefendant McKinney in
> setting fire to the Belvidere residence while knowing that codefendant

11

McKinney possessed an intent to kill.  Therefore, the evidence was
sufficient to support defendant's convictions.

Daniels, slip op. at 2.

Petitioner's statement to police supported a finding that Petitioner aided and

encouraged McKinney, while knowing that McKinney possessed an intent to kill.  In his

statement to police, Petitioner admitted that he heard Paula Bailey tell Paul Bailey and

McKinney that she would pay someone $1,000 to burn down the house on Belvidere.  He

was present when Paula Bailey identified the house for McKinney.  Petitioner admitted to

being with McKinney when he drove to a gas station and filled a plastic container with

gasoline.  Petitioner accompanied McKinney as McKinney poured gasoline along the side

of the house on Belvidere.  The men then returned to the gas station.  Petitioner exited the

vehicle and put a jug on the ground.  McKinney filled the jug with gasoline.  They then

returned to the Belvidere House.  McKinney returned to the side of the house where he

had previously poured the gasoline.  He directed Petitioner to go to the other side of the

house.  Petitioner did so and poured gasoline onto the house.  Petitioner then saw flames

coming from the side of the house where McKinney had poured the gasoline and the two

men fled.  Petitioner also admitted to receiving $200 from McKinney for being there

when McKinney set the house on fire.  In addition, Consuella Lewis testified that she

heard McKinney asking Paula Bailey for money after the fire had been set.  Lewis

testified that McKinney told Bailey that he needed $200 to pay Petitioner.

Petitioner's statement to police supported a finding that Petitioner aided and

In light of the evidence presented at trial, the Court finds the state court's

disposition of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law.  The Court of Appeals cited case law which plainly incorporated the Jackson standard, and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of second-degree murder and assault with intent to murder. Therefore, no relief will be granted on this claim.

### B.  Alleged Denial of Right to Counsel

In his second claim for habeas relief, Petitioner alleges that he was denied his Sixth Amendment right to counsel when the trial court replaced Petitioner's court-appointed attorney with a different court-appointed attorney when Petitioner was not present and without notifying Petitioner.

The Sixth Amendment guarantees an accused in all criminal prosecutions the right to the assistance of counsel in his defense.  U.S. Const. amend. VI.  "[T]he purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'"  Wheat v. U.S., 486 U.S. 153, 159 (1988), *quoting* Strickland, 466 U.S. at 689. "[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'"  Id., *quoting* U.S. v. Cronic, 466 U.S. 648, 657 n.21 (1984).  "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id.  Thus, "when a defendant is denied the counsel he prefers, the constitutional concern

13

is whether he received an effective advocate." Ray v. Curtis, 21 Fed. Appx. 333, 335 (6th Cir. 2001).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, stated, in pertinent part:

> [D]efendant claims that the trial court erred in, sua sponte and without justification or cause, removing his former trial attorney and appointing a new attorney approximately six months before the commencement of trial. After adversary judicial proceedings have been initiated, a trial court's removal of a criminal defendant's appointed counsel for any reason other than gross incompetence, physical incapacity, or contumacious conduct violates the defendant's constitutional right to counsel. See People v. Johnson, 215 Mich. App. 658, 663, 665-666; 547 N.W.2d 65 (1996). However, the record reveals that defendant acquiesced in his representation by the new attorney. A defendant may not acquiesce to counsel's representation and then claim error on appeal. See People v. Barclay, 208 Mich. App. 670, 672-673; 528 N.W.2d 842 (1995). In any event, from the record presented to this Court, it appears that the prior counsel's conduct was grossly incompetent and/or contumacious. Therefore, the trial court had proper grounds for removing defendant's counsel. Johnson, supra at 663.

Daniels, slip op. at 4.

Petitioner was not deprived of his right to counsel. He was supplied with a new attorney the day after his former attorney was removed. Petitioner argues that his trial counsel did not engage in gross incompetence or contumacious conduct, nor was he physically incapacitated, and that the trial court, therefore, lacked cause to remove him. Petitioner has failed to show that the Michigan Court of Appeals' conclusion that counsel was grossly incompetent and/or contumacious was an unreasonable determination of the facts in light of the evidence.

14

The trial court scheduled April 24, 1997, as a date for hearing motions filed in this case. Two defense attorneys had filed motions, but failed to appear at the hearing. The other two defense attorneys, including Petitioner's, failed to file any motions. On the date scheduled for the hearing the prosecutor informed the Court that Petitioner's trial attorney had indicated that he was going to file a motion to suppress Petitioner's confession pursuant to <u>People v. Walker</u>, 374 Mich. 331 (1965).[2] After the filing deadline for motions had passed, Petitioner's attorney had yet to file a single motion. The trial court determined that the defense attorneys' failure to file motions and appear in court placed the scheduled trial date in jeopardy. The trial court stated that it was unwilling to postpone the trial date, which already had been postponed once. The trial court, therefore, decided to replace all defense counsel. Petitioner's replacement counsel thereafter filed four motions on his behalf.

The purpose of the Sixth Amendment is to "guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." <u>Wheat</u>, 486 U.S. at 159. The Court concludes that the trial court's determination that a replacement attorney was appropriate in this case did not deprive Petitioner of his right to an effective advocate. The Court further finds that the state court's conclusion that the trial court did not deprive Petitioner of his right to an attorney was not contrary to or an unreasonable application of Supreme

---

[2]      <u>People v. Walker</u>, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

15

Court precedent.  The Court, therefore, denies habeas relief on this claim.

## C.  Alleged Prosecutorial Misconduct

Petitioner next claims that he is entitled to habeas corpus relief because the prosecutor engaged in misconduct.  Specifically, Petitioner alleges that the prosecutor engaged in misconduct when he was quoted in a newspaper article regarding the problem of revenge arson fires in the city of Detroit and by making the following allegedly improper arguments during closing argument: asking the jury to base its verdict on sympathy and arguing facts not in evidence.

Respondent argues that this claim is barred from review because it is procedurally defaulted.  The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir.

16

1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30.  If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.  Rust, 17 F.3d at 161.  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's prosecutorial misconduct claims are procedurally defaulted by looking to the last reasoned state court judgment

17

denying Petitioner's claim.  *See* <u>Coleman</u>, 501 U.S. at 729-30.  The last state court to address this claim, the Michigan Court of Appeals held that the issue was not preserved for appellate review because Petitioner failed to object to the prosecutor's conduct at trial. <u>Daniels</u>, slip op. at 3.  The Sixth Circuit Court of Appeals has held that the failure to object rule is regularly followed by Michigan courts in the context of prosecutorial misconduct claims.  <u>Simpson v. Jones</u>, 238 F.3d 399, 408 (6th Cir. 2000); <u>Toler v. McGinnis</u>, 23 Fed. Appx. 259, 269 (6th Cir. 2001).  Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750.

In the instant case, Petitioner claims that his trial attorney's ineffectiveness constitutes "cause."  The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him."  <u>Id.</u>, at 753.  The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however."  <u>Id.</u> at 753-54 (internal citations omitted).

18

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." <u>Id.</u>

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

<u>Id.</u> at 689 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent

19

assistance." Id.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  The Sixth Circuit, applying the Strickland standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." McQueen v. Scroggy, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997).

Assuming that Petitioner's trial counsel erred in failing to object to the alleged instances of prosecutorial misconduct, Petitioner cannot establish prejudice resulting from these alleged errors because his prosecutorial misconduct claims are not meritorious.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982).  The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting* Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).

First, Petitioner claims that the prosecutor engaged in misconduct when he was quoted in a newspaper article regarding the problem of revenge arson fires in the city of

20

Detroit.  The Michigan Court of Appeals, although finding Petitioner's prosecutorial

misconduct claims not preserved for review, did address the merits of this claim.  The

Michigan Court of Appeals held, in pertinent part:

> Defendant first claims that the prosecutor made an improper civic duty
> appeal to the jury through a <u>Detroit Free Press</u> article concerning an
> unrelated firebombing case in which the prosecutor made general
> statements about vengeance arson.  "[P]rosecutors should not resort to civil
> duty arguments that appeal to the fears and prejudices of jury members."
> <u>People v. Bahoda</u>, 448 Mich. 261, 282; 531 N.W.2d 659 (1995).  Here, the
> prosecutor's remarks were not made to the jury during closing argument.
> The remarks were contained in a newspaper article about an unrelated fire.
> The jury was repeatedly instructed not to read anything in the newspaper
> about this case; therefore, there is no indication that the jury was even
> aware of the prosecutor's remarks.  Moreover, assuming the jury saw the
> article, defense counsel admitted that the tenor of the article was not that the
> community should take some action to prevent revenge arsons, just that
> jurors might get that impression from the article.

<u>Daniels</u>, slip op. at 3.

Petitioner has failed to show that the state court's conclusion in this regard was

contrary to or an unreasonable application of Supreme Court precedent.  Further, this

Court concludes that the prosecutor's conduct in giving an interview to a newspaper

reporter regarding revenge arsons did not render the entire trial fundamentally unfair to a

degree tantamount to a due process deprivation.

Next, Petitioner claims that the prosecutor engaged in misconduct in his closing

statement when he appealed to the jurors' sympathy for the victims to convict Petitioner.

Petitioner objects to the prosecutor referring to the victims as "innocent," "lambs to the

slaughter," and "little kids that didn't stand a chance."  In addition, Petitioner asserts the

following statement was improper:

> And that child is crying right now.  And that's a child you can do something
> about.  You can rescue that child from the claims of an unjust and incorrect
> verdict, which would be a not guilty in this case or a preparation to burn,
> and stuff like that.  And I say to you, rescue the child that you can save, and
> that is the child of justice.

Even assuming that these references to the innocence of the victims were improper, they did not rise to the level of prosecutorial misconduct.   Viewed in its entirety, the prosecutor's closing argument reviewed the evidence presented at trial and asked the jury to convict on that basis.  His comments did not deprive Petitioner of a fundamentally fair trial and, therefore, did not constitute prosecutorial misconduct.

Finally, Petitioner argues that the prosecutor argued facts not in evidence in his closing argument.  During his closing argument, while discussing Petitioner's statement to police, the prosecutor said, "This isn't the statement of the other guys.  This is his own statement."  Tr., 11/5/97, p. 116.  Petitioner maintains that this statement improperly informed the jury that "other guys" had made statements against defendant.  The Court finds Petitioner's reading of this statement unpersuasive.  The prosecutor was simply highlighting for the jury that Petitioner's own statement to police implicated him in the crimes for which he was on trial.  The prosecutor's argument was not improper.

Petitioner has failed to demonstrate that the prosecutor engaged in misconduct. Thus, the Court concludes that trial counsel was not ineffective in failing to object to the prosecutor's conduct.  Because Petitioner has failed to establish that his trial attorney rendered ineffective assistance of counsel, he has failed to show cause for his procedural

22

default.  His claims are therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice.  <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.  <u>Schlup</u>, 513 U.S. at 321.  Thus, Petitioner must assert a constitutional error along with a claim of innocence.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  <u>Id.</u>  This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt."  <u>Id.</u> at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, the prosecutorial misconduct claims are barred from consideration by procedural default.

### D.  Jury Instructions

Petitioner claims that the jury instructions deprived him of his right to due process because they did not adequately state Michigan law with respect to aiding and abetting felony murder and assault with intent to murder.

Generally, a claim that a state trial judge gave erroneous jury instructions is not cognizable in a federal habeas action unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991), *quoting* <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973).  "[I]t must be established

23

not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'"  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).   Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  Estelle v. McGuire, 502 U.S. 62, 72 (1991), *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973).

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, held that the challenged instructions "as a whole, adequately conveyed to the jury the concept of aiding and abetting and the intent required to convict defendant as an aider and abettor, as well as the intent required to commit arson." Daniels, slip op. at p. 3.

Petitioner has failed to show that the state court's decision that the trial court's instructions adequately conveyed to the jury the elements of the charged crimes was contrary to or an unreasonable application of Supreme Court precedent; nor has he shown that the instruction so infected the entire trial as to violate his right to due process. Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### E.  Admissibility of Petitioner's Statement to Police

Petitioner claims that the trial court erred in admitting his statement to police because the statement was involuntarily given.  A Walker hearing was conducted in the trial court to determine that admissibility of Petitioner's statement.  *See* People v. Walker, 374 Mich. 331 (1965).  However, at the Walker hearing, Petitioner's attorney focused on

whether the confession was the result of an unlawful arrest, not on whether the confession was involuntary.

Petitioner raised the pending claim regarding the voluntariness of his confession in his motion for relief from judgment in state court. The trial court held that Petitioner failed to show that his confession was not voluntarily made:

> As the court stated in its prior opinion, the defendant was taken into police custody and held for less than 3 hours before he made a confession. The brief period of time the defendant was in custody before making a statement does not hint at extreme tactics applied by officers to extract a confession. The defendant does not complain of brutality, threats, or injury caused by the interrogating officers, or any coercion that would support his claim. When a court reviews a motion to suppress a confession based on a claim of involuntariness, it must consider (1) the accused's age, educational and intelligence level, and the extent of the accused's prior experience with the police, (2) the length of detention before the statement was made, (3) the repeated and prolonged nature of the questioning, and (4) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse or deprived of food, sleep or medical attention. People v. Good, 186 Mich. App. 180, 188-89 (1990); People v. Doud, 462 Mich. 621 (2000). The defendant makes no claim that he was coerced, only that the Detroit Police Department had a policy of detaining witnesses for lengthy periods for the purpose of extracting information.

People v. Daniels, No. 96-008523-03, slip op. at 2 (Wayne County Circuit Court Oct. 24, 2002).

In support of his claim that his confession was not voluntarily made, Petitioner attaches two affidavits to his habeas petition, the Affidavits of Ricardo Owens and Carol Leonard. Both Mr. Owens and Ms. Leonard state that they were present when Petitioner was arrested. They were informed that he would be taken downtown for questioning. Approximately twenty minutes after Petitioner was arrested, Mr. Owens and Ms. Leonard

25

arrived at the Detroit police headquarters.

The Affidavits of Ricardo Owens and Carol Leonard are the only evidence Petitioner submits in support of his argument that his statement to police was involuntary. They both state that they waited approximately two hours until police arrived with Petitioner. Petitioner alleges the officers transporting him "held him in a car for more than two hours while they made physical threats and coerced a statement [from Petitioner]." (Pet. for Habeas Corpus at 6.) Petitioner asks the Court to rely on his allegations alone and find that the delay in transporting Petitioner to the police station resulted in a coerced confession. At the state court suppression hearing, one of the officers who transported Petitioner to police headquarters testified that, while in transit, Petitioner asked why he had been arrested. The police officer and his partner decided to show Petitioner by stopping at the burned-down home on Belvidere Street.

Petitioner argues that the Court should conduct an evidentiary hearing regarding this claim. Rule 8, Rules Governing Section 2254 Cases in the United States District Courts provides, that a court may, in its discretion, conduct an evidentiary hearing regarding the claims contained in the habeas petition. A federal court may conduct an evidentiary hearing only if the facts underlying the claim, if true, would establish a constitutional error. Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002). A petitioner is not entitled to "fishing expeditions based on a petitioner's conclusory allegations." Bracy v. Gramley, 117 S. Ct. 1793, 1799 (1997).

In this case, the Court holds that an evidentiary hearing is unnecessary. Aside

26

from reiterating his unsupported allegations, Petitioner does not state what he hopes to

demonstrate to the Court at such a hearing.  Petitioner has failed to show that the state

court's decision that his confession was voluntary was contrary to or an unreasonable

application of Supreme Court precedent.  The Court denies habeas relief on this claim.

### F.  Alleged Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial attorney rendered ineffective assistance.

Specifically, Petitioner alleges that his trial attorney was ineffective in: (i) failing to show

the jury that the side of the house Petitioner was on had no fire and no gas; (ii) admitting

that Petitioner had poured gas over Petitioner's objections; (iii) failing to call four

witnesses in support of his claim that he was coerced into making a statement; (iv) failing

to object to prosecutorial misconduct and erroneous jury instructions; (v) failing to

investigate and present a defense; and (vi) failing to present evidence that Petitioner was

coerced and threatened with violence if he did not confess.

Petitioner asks for an evidentiary hearing with respect to this claim.  A petitioner is

not entitled to an evidentiary hearing to conduct a "fishing expedition[] based on a

petitioner's conclusory allegations."  Bracy v. Gramley, 117 S. Ct. 1793, 1799 (1997).

With respect to Petitioner's first, second, and fourth ineffective assistance of counsel

claims, the Court determines that an evidentiary hearing is not necessary for a fair

adjudication of the claims.  With respect to Petitioner's remaining ineffective assistance

of counsel claims, the Court determines that Petitioner's conclusory allegations do not

warrant an evidentiary hearing.

27

As discussed above, the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. Strickland 466 U.S. 668 (1984). The two-pronged test requires a petitioner to prove that counsel's performance was deficient, and that counsel's deficient performance prejudiced petitioner. Id. at 687.

Petitioner claims that his attorney was ineffective in failing to show the jury that the side of the house Petitioner was on had no fire and no gas and in admitting that Petitioner had poured gasoline on one side of the house over Petitioner's objections. First, in his cross-examination of the fire investigator, Petitioner's attorney elicited testimony that there was unburned gasoline on one side of the house. Petitioner has failed to show what additional or alternative testimony counsel should have elicited regarding the gasoline at the house. Second, in his statement to police, Petitioner admitted to pouring gasoline on one side of the home. Thus, Petitioner has failed to show that his attorney was ineffective in referencing something admitted in Petitioner's own statement to police.

Third, Petitioner claims that his attorney was ineffective in failing to call four witnesses to support his claim that he was coerced into making a statement to police. Petitioner fails to identify these four witnesses or explain how their testimony would have proven coercion. Petitioner's conclusory allegation in this regard is insufficient to establish ineffective assistance of counsel.

Fourth, Petitioner claims that his attorney was ineffective in failing to object to

28

prosecutorial misconduct and erroneous jury instructions. These claims of ineffective assistance of counsel are addressed *supra*.

Fifth, Petitioner claims that his attorney was ineffective in failing to investigate and present a defense. In order to establish ineffective assistance of counsel, a petitioner must make more than merely speculative, vague assertions. Bowen v. Foltz, 763 F.2d 191, 194 (6th Cir. 1985). Petitioner's unsupported allegations are insufficient to support a claim of ineffective assistance of trial counsel.

Finally, Petitioner claims that his attorney failed to present evidence that Petitioner was coerced and threatened with violence if he did not confess. Petitioner fails to identify with particularity any such evidence which defense counsel should have but failed to present. Petitioner was present when this alleged coercion occurred, but fails to submit even an affidavit detailing any facts which would support his claim. Thus, Petitioner has failed to establish that his attorney was ineffective in failing to present evidence of coercion.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


<u>s/ DENISE PAGE HOOD</u>
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED:<u> May 26, 2005</u>